RECEIVED
IN ALEXANDRIA, LA
AUG 15 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

KEVIN COLE                                DOCKET NO. 05-0996

VERSUS                                    JUDGE DEE DRELL

WARDEN FREDRICK MENIFEE        MAGISTRATE JUDGE JAMES D. KIRK

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the Court is a Petition for Writ of Habeas Corpus filed by Petitioner, Kevin Cole, pursuant to 28 U.S.C. §2241 and referred to me by the district judge for report and recommendation pursuant to federal law and a standing order of this Court. Petitioner claims that the Bureau of Prisons ("BOP") miscalculated the commencement date of his sentence and failed to give Petitioner post-sentence credit for time spent in state custody; thus, Petitioner claims the BOP turned his concurrent sentence into a consecutive sentence.

At the time of filing his petition, Cole was incarcerated by the Federal Bureau of Prisons (BOP) at the United States Penitentiary in Pollock, Louisiana. In January 2006, Cole filed with the Court a notice of change of address indicating that he was now incarcerated in Oxford, Wisconsin. (Doc. #13.) The United States Fifth Circuit Court of Appeals has held that Section 2241 jurisdiction over a federal prisoner lies only in the district of incarceration as determined at the time of filing. See Hooker v. Sivley, 187 F.3d 680, 682 (5th Cir. 1999) (a § 2241 petition must be filed in the district of incarceration); United States v. Gabor,

905 F.2d 76, 78 (5th Cir. 1990) (To entertain a § 2241 petition, the district court must have jurisdiction over the prisoner or his custodian at the time of filing). While Cole is no longer incarcerated within this district, he was incarcerated here at the time of filing. Therefore, jurisdiction and venue are proper in this district. Furthermore, the petitioner has alleged, the respondent has admitted, and the record reflects that Petitioner exhausted the BOP three-level administrative remedy process.

## Factual Background

Petitioner was arrested on several state charges in the State of Oklahoma, Tulsa County.[1] On June 29, 1996, Petitioner posted bond and was released. (Doc. #1, Exhibit B; Doc. #10, Singleton Dec. ¶6.) Then, in February 1997,[2] Petitioner was arrested again, this time charged with drug distribution in Tulsa County. He was held on a one million dollar bond. While being held on the drug charge, Petitioner was also charged with First Degree Murder and Conspiracy to Commit Murder. Those charges were dropped on January 29, 1998. (Doc. #1, Ex. C, I.)

On August 5, 1997, the United States Marshal Service ("USMS") obtained physical custody of Petitioner Cole pursuant to a writ of

---

[1] Petitioner states that he was arrested on May 28, 1996, and Defendant states that Petitioner was arrested on June 6, 1996.

[2] Petitioner states that this arrest occurred on February 18, 1997, while Defendant claims the arrest occurred on February 13, 1997.

2

habeas corpus ad prosequendum for federal charges arising out of the same acts that were the basis of various the state charges. Ultimately, Cole pled guilty to one count of the federal indictment in the United States District Court for the Norther District of Oklahoma.[3] In May 1998, Petitioner was sentenced in that same court to 180 months of imprisonment for the offense of Conspiracy to Possess with Intent to Distribute Cocaine Base in Excess of 50 Grams and to Distribute Cocaine Base in Excess of 50 Grams, in violation of federal law.

On May 28, 1998, Cole also appeared in state district court in Oklahoma and pled guilty to the state charge of Assault with a Dangerous Weapon. Cole was sentenced to a term of 10 years imprisonment under the custody of the Oklahoma Department of Corrections. The district judge ordered that Cole's state term of imprisonment run concurrent to the federal sentence and that Cole be remanded to the county jail to await pickup by the USMS. That is, Cole was to be returned to federal custody. (Doc. #1, Ex. D, E.)

On June 9, 1998, Cole was inadvertently transferred by the Tulsa County Sheriff's Office to the Oklahoma Department of Corrections. To correct the error and eliminate any confusion, on June 24, 1998, Tulsa County writted Cole out to appear before the

---

[3]Petitioner states that he entered his guilty plea in January 1998. According to the respondent, Petitioner entered his guilty plea on November 3, 1997.

state sentencing judge, who addressed the June 9th transfer. The minutes of the court were amended in order "to be more instructive to the State and also the Sheriff's Office." (Doc. #1, Ex. E.) It was clarified that the intent of the prosecutor and court had been "that the State release all holds on [Cole] and designates and agrees to the place of institution with the federal authorities and that a hold be placed...." Id. The judge reiterated that the state sentence was to run concurrent to the federal sentence and that Cole was "to be held in Tulsa County jail until he is picked up by the federal authorities, and our case will run concurrent with that." (Doc. #1, Ex. E.) The judge told Cole that he presumed everything would work out from that point on, but if anything happened, to inform his attorney. Id.

In a July 9, 1998 letter to the USMS, the Oklahoma Department of Corrections stated that the Petitioner had been delivered by the Tulsa Sheriffs to the Oklahoma DOC in error and that Petitioner was actually to be released back to the Marshals for incarceration on the federal case. (Doc. #1, Ex. F.)

On July 30, 1998, in response to the above-referenced letter, the USMS transferred the Petitioner from state custody to FCI El Reno, a BOP facility. However, the BOP then determined that Cole was **not** to be placed in federal custody. So, on August 21, 1998, the Petitioner was returned to the Oklahoma DOC to complete the state sentence. (Doc. #1, Ex. I.) On August 7, 2002, Cole was

4

released from his state sentence and was transferred back to the BOP to serve out the remainder of his federal sentence.

On September 26, 2002, Cole was admitted to USP Pollock to serve the remainder of his 180 month federal term of incarceration. At the time Respondent filed its memorandum (Doc. #10), Cole was still incarcerated at USP Pollock. (Doc. #10, Singleton Dec. ¶6.) He has subsequently been moved to another federal prison.

## Law and Analysis

### I. Federal Sentence Computation

Federal regulations afford prisoners administrative review of the computation of their credits, as set forth at set forth in 28 C.F.R. §§ 542.10, et seq., and prisoners may seek judicial review of the computations after exhaustion their administrative remedies. Wilson, 503 U.S. at 333, 112 S.Ct. at 1354; U.S. v. Dowling, 962 F.2d 390, 392 (5th Cir. 1992).

The possibility of credit for time served prior to the date the sentence commences is set forth in 18 U.S.C. § 3585, as follows:

> (a) Commencement of sentence – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
> (b) Credit for prior custody. – A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
> (1) as a result of the offense for which the sentence was imposed; or

>     (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
> that has not been credited against another sentence.

A federal sentencing court is not authorized to apply Section 3585(b). Instead, it is the Attorney General, through the Bureau of Prisons, who computes the amount of Section 3585(b) credit after the defendant has begun to serve his sentence. <u>U.S. v. Wilson</u>, 503 U.S. 329, 112 S.Ct. 1351, 1353 (1992). The Bureau of Prisons has detailed procedures and guidelines for determining the amount of credit available to prisoners.

In computing a federal sentence, two decisions must be made: (1) when the federal sentence commenced, and (2) the extent to which the defendant may receive credit for time spent in custody prior to the commencement. Here, the BOP determined that the commencement date was August 7, 2002, the date that Cole was released to federal custody. Cole submits that his sentence commenced on May 19, 1998. (Doc. #1-5, Exhibit A.) Additionally, Cole contests the computation of his credit.

Apparently, the BOP initially calculated Cole's sentence giving him "jail credit" from:

(1) May 28, 1996 (the date of the first arrest) through June 29, 1996 (the date that Cole was released on state bond); and
(2) February 13, 1997 (the date of the second arrest) through August 6, 2002 (the date that Cole was released from the Oklahoma DOC).

(Doc. #1, Exhibit G.) Under this computation, Cole's statutory

release date was February 5, 2010, and the full term expiration date was January 11, 2012. The projected release date was February 5, 2010. The BOP then recalculated Cole's sentence, giving him "jail credit" from:

(1) May 28, 1996 (the date of the first arrest) through June 29, 1996 (the date that Cole was released on state bond); and
(2) February 13, 1997 (the date of the second arrest) through June 8, 1998 (the date that Cole physically entered federal custody).

(Doc. #1, Ex. H.) This recalculation changed Cole's statutory projected release date from February 5, 2010, to April 5, 2014, and the projected full term expiration date from January 11, 2012, to March 10, 2016. (Doc. #1, Ex. G, H.) Cole argues that His release date should be February 5, 2010.

II. Commencement of Federal Sentence

First, Cole argues that his sentence commenced on May 19, 1998, the date he was sentenced and that the BOP erroneously delivered him to state custody to serve a sentence that was supposed to be served in federal custody. (Doc. #1-4, p.5.) A federal sentence commences on the date the defendant is received in custody awaiting transportation to the official detention facility at which the sentence is to be served. The earliest date a federal sentence can commence is the date it is imposed. U.S. v. Flores, 616 F.2d 840, 841 (5th Cir. 1980). The precise date the term commences is determined by consideration of whether, at the time of sentencing, the defendant was subject to multiple terms of

imprisonment and whether he was under the primary jurisdiction of a non-federal sovereign.

A sovereign that first arrests an offender has primary jurisdiction over the offender for purposes of trial, sentencing, and incarceration until that sovereign relinquishes its priority[4] by (1) bail release, (2) dismissal of the state charges, (3) parole release, or (4) expiration of sentence[5]. A sovereign does not relinquish authority by producing a state prisoner for sentencing in federal court via a writ of habeas corpus ad prosequendum. See Ganser, 2000 U.S. Dist. LEXIS at 4, *citing* Thomas v. Brewer, 923 F.2d 1361, 1365 (9th Cir. 1991).

In the instant case, the respondent argues that the State of Oklahoma obtained primary jurisdiction over Cole upon his arrest on February 13, 1997, and that state never relinquished that jurisdiction. Cole, on the other hand, submits that, while the USMS obtained custody of him on August 5, 1997, via a writ of habeas corpus ad prosequendum, the federal government "inherited" primary jurisdiction from the state when the state allowed Cole to

---

[4]See United States v. Ganser, 2000 U.S. Dist. LEXIS 12070 (E.D.La.); 2000 WL 1154609 (E.D.La.), *citing* United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980); Thomas v. Brewer, 923 F.2d 1361, 1365 (9th Cir. 1991).

[5]See U.S. v. Cole, 416 F.3d 894, 897 (8th Cir. 2005), *citing* United States v. Smith, 812 F.Supp. 368, 371 (E.D.N.Y.1993).

8

post bail on June 29, 1996, and dismissed all remaining state charges on January 29, 1998. The state of Oklahoma did not have a claim to Cole between January 29, 1998 (the date Oklahoma dismissed the last of its state charges against Cole), and May 28, 1998 (the date that Cole pled guilty in state court), other than the federal officials. Therefore, Cole argues that his detention during that time period must be attributed to the federal sentence. (Doc. #1-4, p.7-8.)

The respondent claims that commencement of the federal term of imprisonment was contingent on the state relinquishing its primary jurisdiction, and that none of Cole's appearances in court caused the state to relinquish jurisdiction. That, however, is not Cole's argument; Cole is not claiming that the state relinquished its priority because of his appearances in court via the writ. Rather, Cole's argument is that the state no longer had primary jurisdiction - that it relinquished primary jurisdiction - because Cole had been released on bail for one charge and all other charges were dismissed. If Cole had not been under federal jurisdiction, then he would have been physically released on January 29, 1998, when the state dismissed the only state charge for which Cole was in custody.[6] After that charge was dropped, the state had no other reason to hold Cole. Thus, the only reason Cole remained

---

[6]Cole had been released on bail in June 1996 for the state charges that he was sentenced for in May 1998.

9

incarcerated was because of the pending federal charges. Federal authorities could not have "borrowed" Cole from another sovereign from January 29, 1998, through May 28, 1998, because there was simply no other sovereign from which Cole could have been borrowed or returned.

The respondent claims that it had erroneously placed Cole in federal custody and subsequently returned him to state custody, but this did not strip the state of its primary jurisdiction. However, per the preceding discussion, the "erroneous placement" issue is inconsequential because Cole was already under the primary jurisdiction of the federal authorities. Simply stated, Cole was initially in the primary jurisdiction of the State of Oklahoma. The federal government "borrowed him" from the state pursuant to a writ of habeas corpus ad prosequendum. Then, the State of Oklahoma dismissed the state charge for which Cole was being held. The only remaining state charge was one for which Cole had previously been released on bond. There is no evidence that Cole's bond was ever revoked. Therefore, through its release of Cole on bail and its dismissal of Cole's charges (two of the four ways a sovereign can relinquish its primary jurisdiction), the State of Oklahoma did, in fact, relinquish its primary jurisdiction over Cole.

Thus, as of the date the last state charge was dropped, January 29, 1998, the writ ad prosequendum was unnecessary and basically no longer valid as there was no other authority to whom

Cole could have been returned. The federal authorities assumed primary jurisdiction over Petitioner. He was being held only on the federal charge from the date the state charges were dropped until the date he was sentenced in state court. Therefore, Cole argues, he was in the primary jurisdiction of the federal government since January 29, 1998; he was under their primary jurisdiction when he was sentenced in state and federal court; and, his federal sentence ran continuously from the date of sentencing. It does appear from the record that Cole's factual assertions are correct. The question is, what effect does this have on Cole's sentence.

First, the respondent argues that Title 18, U.S.C. Section 3585(b) is applicable because Cole was in the primary jurisdiction of the state.[7] The respondent did not address Cole's argument that he was under primary federal jurisdiction after the state charges were dropped. Likewise, the respondent did not address the implication of the BOP's interpretation of Title 18, U.S.C. Section

---

[7]According to Title 18, U.S.C. Section 3585(b), defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences - (1) as a result of the offence for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence. The respondent argues that, because the time spent in the custody of the State of Oklahoma was credited against Cole's Texas sentence, the BOP was not required to credit that time toward his federal sentence.

3585(a). That section provides that a federal sentence beings to run on the date that a defendant is received into custody awaiting transportation to the official detention facility where his sentence is to be served. The BOP has interpreted §3585(a) in its sentence computation manual (Program Statement), "[I]f the prisoner... is in exclusive federal custody (not under the jurisdiction of a federal Writ of Habeas Corpus Ad Prosequendum) at the time of sentencing as the basis of conviction for which the sentence is imposed, the sentence commences on the date of imposition, even if a state sentence is running along concurrently."

While Cole had initially been under the jurisdiction of a federal writ, as of January 1998, the state no longer had a reason to detain Cole, and he was in the exclusive jurisdiction of federal authorities through the time of sentencing. He was no longer subject to the writ of habeas corpus ad prosequendum; he was no longer being "borrowed" by federal authorities from the state. This demonstrates the intent of the state to relinquish or transfer its primary jurisdiction to the United States.

Further evidence of that intent is the fact that a special hearing was called in state court on June 25, 1998, subsequent to Cole's sentencing, in order to confirm that the intent of the state was to release any and all holds it may have had on Cole. At that hearing, it was noted that the state "designates and agrees to the

place of institution with the federal authorities...." (Doc. #1-5, Exhibit E.) The court proclaimed, "I'll repeat it - - [Cole's state sentence] runs concurrent with his federal case, CF-97-53 and he is to be held in Tulsa County jail until he is picked up by the federal officials, and our case will run concurrent with that.... The place designated is a federal institution." (Doc. #1-5,Exhibit E.) Thus the state reiterated its intent to release any priority it may have had over Cole and for the state sentence to run concurrent with the federal sentence that Cole was to begin serving once the federal authorities retrieved him from the county jail.

Further evidence of that intent is correspondence from the State of Oklahoma saying that it transferred Cole to a state facility in error and that Cole was to be released to the BOP for incarceration. (Doc. #1-5, Exhibit F.) It was never the intent of the State of Oklahoma to retain jurisdiction or custody over Cole.

The respondent argues that the BOP is authorized to convert concurrent sentences to consecutive sentences by refusing to accept an inmate into custody in order to commence the federal sentence. However, in this case, the federal sentence had already begun. The federal officials could not refuse to take Cole after sentencing because he was already in their primary jurisdiction at the time of sentencing in state and federal court. Cole had been in federal custody, had been designated and transferred to a federal facility to serve out both sentences concurrently, and the BOP initially

13

calculated his release date accordingly.

In summary, Cole has established that he had initially been "loaned" to federal officials; while "on loan," the state of Oklahoma dismissed the only remaining state charge for which Cole was being detained by the state (January 29, 1998); the state relinquished its jurisdiction by its prior release of Cole on bail for the only pending state case, not revoking that bail, and dismissing all other charges; Cole would have been released on January 29, 1998, but for the pending federal charge; Cole continued to be held after January 29, 1998, in Tulsa County Jail, solely for the federal charges pending against him; after January 29, 1998, there was no other sovereign to whom Cole could have been returned; the BOP never released its federal jurisdiction over Cole; Cole was entitled to serve a continuous sentence; while Cole was in federal jurisdiction, the state expressly ordered that Cole's sentence run concurrent to the federal sentence that Cole had received.

At the time of Cole's federal sentencing on May 19, 1998, he was under exclusive federal jurisdiction, was in exclusive federal custody, and was designated to a federal facility to serve out the state and federal sentences concurrently.[8] The BOP's determination

---

[8] See e.g., Weekes v. Fleming, 301 F.3d 1175, 1181 (10th Cir. 2002). "The state district court's subsequent sentencing order expressly provided that Mr. Weekes' state sentence should be served concurrently with a future federal sentence, and the court sent a copy to the judge presiding over Mr. Weekes' federal

14

that Cole entered federal custody in error was itself erroneous. The BOP's initial determination that Cole was under federal jurisdiction was correct, as the state had relinquished jurisdiction subsequent to the writ of habeas corpus.

## Conclusion

Under the circumstances and for the reasons stated above, Cole should be given federal credit for time served since May 19, 1998, the date his federal sentence actually commenced.[9] The United States had primary jurisdiction, and Oklahoma expressly conceded that fact in court and in correspondence to the BOP. (Doc. #1-5, Exhibit F.) Therefore, it is recommended that Petitioner's Petition for Writ of Habeas Corpus be GRANTED and that he be given federal credit for time served since May 19, 1998.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from

---

prosecutions. Idaho then lodged a detainer expressly noting that his state sentence was concurrent and requesting Mr. Weekes' return to the state prison system upon completion of his federal sentence, further affirmatively showing its relinquishment of Mr. Weekes to federal primary custody."

[9] This recommendation is not based on the consecutive or concurrent nature of Cole's sentence. The United States Attorney General and the state work that out between themselves by using writs of habeas corpus and detainers. Rather, the recommendation is based on the fact that Cole was in exclusive federal custody at the time of sentencing; thus, the federal sentence commenced on the date of imposition.

service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 15th day of August, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE